Rule 23 Order filed
July 13, 2026
Motion to publish granted
August 11, 2026

2026 IL App (5th) 240725

NO. 5-24-0725

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* BRENDA K. CONNER, n/k/a Brenda K. Julian, | ) ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 79-D-63 |
| CHARLES W. CONNER, | ) ) | Honorable John W. Sanders, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Charles W. Conner, appeals the May 20, 2024, order of the circuit court of Williamson County denying his petition for a zero dollar child support order, denying his motion to suspend child support arrearage payments, and denying his petition for injunctive relief. On appeal, Charles raises numerous issues. Specifically, he argues the trial court erred by (1) ruling that a means-tested concurrent Supplemental Security Income (SSI) and Social Security Retirement (SSR) benefit is not protected under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(3) (West 2022)); (2) denying his injunctive relief because the Illinois Department of Healthcare and Family Services' (HFS) issuance of an income withholding order on the SSR portion of his benefit was in violation of the rules

1

promulgated by the Federal Office of Child Support Enforcement; (3) deviating from the statutory guidelines requiring a zero dollar support order without giving written findings specifying the reasons for the deviation; (4) declining to enjoin HFS from threatening to suspend his driver's license; (5) dismissing his petition seeking a zero dollar child support order in accordance with section 505(a)(3.3b) of the Act on the grounds that section only applies to current child support and does not preclude taking means-tested income for past-due child support; and (6) dismissing his petition for a zero dollar child support order because the petition must allege that there has been a substantial change in circumstances in addition to receiving only means-tested assistance and inability to work due to a medically proven disability. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Because the parties shared a last name, we will refer to them by their first names throughout this decision. Charles and Brenda married on June 17, 1973, in Franklin County, Illinois. They had one child during the course of the marriage. On March 2, 1979, Brenda filed a petition for dissolution of marriage. At the time of filing, Brenda was pregnant with the parties' second child.

¶ 4     On March 12, 1979, the trial court entered a judgment of dissolution of marriage. In its judgment, the court ordered Charles to pay Brenda the sum of $100 per month for child support. The court reserved the questions of custody and support of the unborn child. On September 8, 1980, the court granted Brenda custody of the second child and increased Charles's child support obligation to $150 per month. Specifically, the court ordered Charles to continue paying $100 to Brenda and to pay the additional sum of $50 per month to the Illinois Department of Public Aid (n/k/a HFS). Once Charles received notice that Brenda was no longer a recipient of public aid, the additional $50 would go to Brenda.

¶ 5    On December 7, 1988, Brenda filed a petition for post-judgment relief to hold Charles in contempt for failure to pay child support. The petition alleged that through December of 1988, Charles was obligated to pay $16,700 in child support, but he only paid $2,000. On May 15, 1989, by agreement of the parties, the trial court found Charles in contempt for his failure to pay child support. The court found Charles in arrears for child support payments in the amount of $14,525. The court found Charles responsible for Brenda's attorney fees incurred in the amount of $750. The court found $6,775 of the total arrearage was owed to HFS, and $8,500 was owed to Brenda. The court ordered Charles to pay Brenda $150 per month for current child support until the children reached the age of 18. Further, the court ordered Charles to pay Brenda an additional $100 per month until the $8,500 arrearage was paid in full. Lastly, the court ordered Charles to pay HFS the sum of $50 per month until the $6,775 arrearage was paid in full.

¶ 6    On September 26, 1989, Brenda filed a motion for additional contempt sanctions. Her motion alleged that pursuant to the May 15, 1989, contempt order, Charles should have made child support payments in the total amount of $1,500, but he only paid $650. On April 11, 1990, the trial court entered an order of contempt. The court found that from May of 1989 through March of 1990, Charles was obligated to make child support payments in the amount of $3,300, but he only paid $650. The court found Charles had not made "sufficient effort" to comply with the May 15, 1989, order, and that his failure to comply was willful and intentional. The court ordered Charles to pay $1,000 by April 16, 1990, to purge himself of contempt.

¶ 7    On April 4, 1990, Charles filed a petition to reduce payment of child support and arrearage. In support, Charles argued that his work schedule was substantially reduced in August of 1989, and his work as a carpenter was seasonal. Charles stated that he was unable to pay the amounts previously ordered by the court, and he asked the court to reduce the child support payments and

3

child support arrearage previously ordered. On May 10, 1990, the court entered an "Order Granting Reduction in Total Child Support Payments." In its order, the court found:

"[T]he original periodic child support of $150.00/month was set based on income of $10,000.00 a year and is below the statutory guidelines, subsequently established by the legislature. That if the guidelines were utilized in setting periodic child support on the evidence now presented of approximately $9,000.00 per year net, defendant would be required for 2 children to pay 25% of net income or $2,250.00 per year or $190 per month for periodic monthly child support. The Court finds that Section 706.1 B-3-b allows withholding of 20% above the periodic child support amount for arrearages in orders of withholding. There are gross arrearages in this case. Thus, the legislative contemplates arrearages for wage earners without substantial assets to be repaid with payments of 20% above the guidelines.

Thus, the Court would add 20% of $190.00 per month or $38.00 per month to the $190.00 to make total monthly payments of $228.00 per month.

However, there is no petition to increase child support on file, said petition having been dismissed with leave to reinstate in May 1989. Therefore, the Court orders $228.00 per month total payments. The first $150.00 per month to be considered current support and the remaining $78.00 per month to be applied to the arrearages. Of the $78.00 on the arrearages, $25.00 shall be paid to the Dept. of Public Aid and the balance, $53.00 to Brenda K. Burris.

This order would then be consistent with the posture of the pleadings in this case, the facts introduced as to income, the statutory guidelines, and equity to Brenda K. Burris

4

who dismissed her petition to increase periodic child support in reliance on Charles. W. Conner's Stipulations."

¶ 8     On April 10, 1994, HFS filed a petition for order to show cause which alleged that from April 11, 1990, through November 17, 1993, Brenda received zero dollars in child support payments from Charles. On May 13, 1994, the parties entered an agreed order for support in which Charles agreed to pay $150 per month as child support. The order stated that the arrearages owed to Brenda and HFS were "unknown" and reserved the arrearage issues for future hearing. On August 5, 1994, the trial court entered a child support order which found Charles in arrears of $22,120.24 for child support. Of that amount, the court found $15,645.24 was owed to Brenda. The remaining $6,475 was owed to HFS. The order stated Charles shall pay $150 per month until July 20, 1997.

¶ 9     On January 19, 1995, the trial court entered an "Agreed Order for Support and Arrearages." The court found the order entered August 5, 1994, requiring Charles to pay $150 per month, was still in effect. The court stated that Charles remained current in the support payments since the last order and paid the support owed for January 1995. The court further ordered Charles to pay $30 per month on the $15,645.24 arrearage owed to Brenda until paid in full, and then $30 per month on the $6,475 arrearage owed to HFS.

¶ 10     On October 11, 1995, HFS filed another "petition for order to show cause." The petition alleged that Charles "willfully and contemptuously failed to comply with the [January 19, 1995,] order to pay support and is in arrears $750.00 as of August 15, 1995, with total arrears due of $22,660.24." On November 17, 1995, the trial court entered an order for withholding. In its order, the court found Charles was in willful contempt for failure to comply with prior support orders. The court found Charles in arrears of $16,635.24 in support owed to Brenda. The court ordered

5

Charles to pay $150 per month in support beginning December 5, 1995. The court further ordered Charles to pay $210 per month beginning December 5, 1995, for arrearages owed to Brenda. The court also entered judgment against Charles in the amount of $990 for unpaid support from August 1994 through November 1995. Lastly, the court ordered Charles to pay an additional lump sum of $500 to Brenda by December 15, 1995, to avoid sanctions for contempt.

¶ 11    On January 2, 1996, the trial court entered an order to take Charles into custody for his failure to appear at a November 17, 1995, hearing. Charles posted $500 bond. On May 23, 1996, the court ordered the $500 paid over to Brenda. The court further found as of May 20, 1996, Charles owed an arrearage of $17,235 to Brenda. The court ordered Charles to pay $180 ($150 for current support and $30 toward the arrearage).

¶ 12    Charles's child support obligation terminated on July 20, 1997, when the parties' youngest child was emancipated.

¶ 13    In 2006, Charles suffered a stroke which left him paralyzed on the left side. In 2008, he applied for and received SSI. In 2015, when Charles reached the age of 62, he received concurrent SSI and SSR benefits. In 2018, HFS issued income withholding orders to the Social Security Administration (Administration) for child support Charles owed in the underlying case as well as a different child support case for a total withholding amount of $252 per month.

¶ 14    On September 19, 2018, Charles filed a "verified petition to determine child support arrearage payment." His petition stated that an income withholding order was filed on May 16, 2008, directing the Administration to withhold $180 per month for past due child support and $36 per month for delinquency. In a separate matter, Franklin County Case No. 1992-F-129, an income withholding order was filed directing the Administration to withhold $36 per month. Charles alleged the Administration did not honor the withholding orders because he received only means-

6

tested assistance and could not work due to a medically proven disability. Charles's petition stated that he voluntarily made monthly payments from 2008 to 2018 in the amounts of $36 for the underlying case and $30 for the Franklin County case. Charles alleged that on June 19, 2018, the State of Illinois served an income withholding order on the Administration for a total withholding of $252. Charles's petition argued that pursuant to section 505(a)(3.3a) of the Act (750 ILCS 5/505(a)(3.3a) (West 2016)), he had an actual gross income at or less than 75% of the most recent United States Department of Health and Human Services Federal Poverty Guidelines, and therefore "there is a rebuttable presumption that the maximum total child support obligation is $120.00 per month to be divided equally among all of the obligor's children." Charles argued that pursuant to section 505(a)(3.3b) of the Act (*id*. § 505(a)(3.3b)), he "may be eligible for a Zero Dollar child support order because he receives means tested assistance and cannot work due to a medically proven disability and has other health problems due to his advanced age."

¶ 15    Charles's petition to determine the child support arrearage payments was heard on August 6, 2019. In an August 6, 2019, docket entry, the trial court stated that Charles argued his child support arrearage payments should be decreased and set at $30 per month due to his disability. The court found "[Charles] fails to fully present testimony regarding [his] finances." In the same entry, the court stated that HFS argued Charles's support payments should be increased to $75 per month. The court found "[HFS] fails to present any authority for said increase." The court concluded that "neither party has presented sufficient evidence to modify child support arrearage payments, and as such said payments will remain as set at $36.00 per month."

¶ 16    On July 29, 2022, Charles filed an amended verified petition to set a zero dollar child support order. Count I argued that section 505(a)(3.3b) of the Act required a zero dollar support order for parents who receive only means-tested assistance or who cannot work due to a medically

7

proven disability. Count II alleged that a substantial change in circumstances occurred since the trial court's 2019 order. Namely, Charles argued that a federal administrative rule, Title 45, section 307.11 of the Code of Federal Regulations (CFR) (45 C.F.R. § 307.11 (2020)) was amended in 2020 in a way that precluded HFS from issuing income withholding orders to garnish SSR benefits when a person receives concurrent SSI and SSR benefits. Charles further alleged that his concurrent SSI and SSR benefit was considered "means-tested assistance" and section 505(a)(3)(A) of the Act (750 ILCS 5/505(a)(3)(A) (West 2020))precluded withholding means-tested assistance as income for child support purposes.

¶ 17 On August 24, 2022, HFS filed a response to Charles's amended petition to set a zero dollar child support order. In response to Count I, HFS argued that section 505(a)(3.3b) of the Act was inapplicable, because it applied to current child support rather than past due support. In response to Count II, HFS argued that the federal rule allowed it to issue income withholding orders to garnish the SSR portion of Charles's benefit. HFS asserted that Charles ignored section 307.11 of the CFR (45 C.F.R. 307.11(c)(3)(iii) (2020)), which "specifically states that it is at the option of the state to identify and prevent garnishment of SSDI or SSR benefits." HFS stated "[i]t is the current policy of HFS not to exercise said option, thus the current withholding is not prohibited by state law or by federal regulations." HFS also argued that section 505(a)(3)(A) of the Act was inapplicable because it concerned current child support rather than past due support.

¶ 18 On April 18, 2022, Charles filed a verified petition for injunctive relief. In his petition for injunctive relief, Charles sought to enjoin HFS from issuing an income withholding order to garnish his SSR benefits. Charles argued that section 505(a)(3.3b) of the Act required "a zero dollar child support order be entered for parents who receive only means-tested assistance or who cannot work due to a medically proven disability." Charles's petition stated he "will suffer

8

irreparable harm without protection because he needs every last dollar of his means-tested assistance to keep from suffering deprivation of food and basic necessities for living." Charles's petition also sought to enjoin HFS from "using their powers pursuant [to] the Illinois Vehicle Code, 625 ILCS 5/7-702(c) to suspend [Charles's] driver's license."

¶ 19 On May 12, 2022, HFS filed its response to Charles's petition for injunctive relief. HFS argued, *inter alia*, that section 307.11 of the CFR permitted HFS to issue income withholding orders to garnish SSR benefits for support payments. HFS further asserted that the Income Withholding for Support Act (750 ILCS 28/1 *et seq.* (West 2020)) also authorized HFS to facilitate the collection of current child support obligations and child support arrearages when an obligor has been ordered to pay support. HFS also argued that section 307.11 of the CFR "includes language which makes the withholding from SSR benefits optional to each state and Illinois has opted to continue to withhold from the SSR portion of benefits received because those benefits flow from the SSR recipient's prior employment." Lastly, HFS stated it was not aware of an action to suspend Charles's driver's license and that an administrative order from the Secretary of State to suspend a driver's license can only be reviewed by the circuit court after exhaustion of administrative review remedies.

¶ 20 On April 19, 2023, Charles filed a "petition to modify and suspend child support and arrearage payment." In his petition, Charles alleged there was a substantial change in circumstances since the entry of the May 23, 1996, child support arrearage order. Charles stated he was unable to work due to a medically proven disability and received only means-tested SSI and concurrent SSI/SSR benefit in the amount of $934 per month.

¶ 21 On April 15, 2024, Charles and HFS entered into a stipulation of facts regarding the income withholding orders entered in 2018 and later. The parties stipulated that from June 19, 2018, to

9

September 30, 2022, HFS issued eight income withholding orders to the Social Security Administration. The parties stipulated that $43.20 per month was being withheld from Charles's SSR benefit. The stipulation further indicated that as of April 2, 2024, Charles owed $13,344.56, excluding interest, in past-due support. Of that amount, Charles owed $7,600.40 to Brenda and $5,744.16 to HFS.

¶ 22    On April 15, 2024, a hearing was held on Charles's pending petitions: his amended petition to set a zero dollar child support order; his petition for injunctive relief, and his petition to modify and suspend his child support arrearage payment. At the hearing, Charles testified that at the time of the 1996 support order, he was employed as a carpenter. He stated that he suffered a stroke in 2006 and could no longer meet the physical demands of carpentry. Charles testified that he received SSI benefits after his stroke and later received SSR benefits when he turned 62 years old.

¶ 23    Charles testified that his concurrent SSI and SSR benefits totaled the same amount as when he received only SSI. Charles stated that $43.20 per month was currently being deducted from his SSR benefit for his support arrearage. He further testified that he received a letter from HFS threatening to suspend his driver's license due to the unpaid balance of past due support.

¶ 24    HFS clarified that SSI was considered means-tested assistance and financed from "general revenues in order to provide disabled indigents with minimally adequate incomes" whereas SSR was considered income because it was financed from payroll deductions based on a person's prior employment. Further, HFS argued that section 307.11(c)(3)(iii) of the CFR authorized HFS to issue income withholding orders to garnish Charles's SSR benefit. HFS stated section 307.11 allowed states the option of garnishing the SSR portion of concurrent SSI and SSR, and that HFS exercised that option due to the significant arrearage amount.

¶ 25    The trial court, by oral pronouncement, denied Charles's amended petition to set a zero dollar support order, denied Charles's petition for injunctive relief, and denied Charles's petition to suspend his arrearage payment. The court found there was a substantial change of circumstances and granted Charles's petition to modify his arrearage payment. The court modified Charles's arrearage payment to $20 per month. The court found, pursuant to the stipulation of the parties, that Charles owed a total of $13,344.56, excluding interest, in past-due support, consisting of a $7,600.40 principal owed to Brenda, and a $5,744.16 principal balance owed to HFS.

¶ 26    On May 20, 2024, the trial court entered a written order consistent with its oral pronouncement. On June 10, 2024, Charles filed a timely notice of appeal.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, Charles argues the trial court erred by (1) ruling that a means-tested concurrent SSI and SSR benefit is not protected under section 505(a)(3)(A) of the Act (750 ILCS 5/505(a)(3)(A) (West 2022)); (2) denying his injunctive relief because HFS' issuance of an income withholding order on the SSR portion of his benefit was in violation of the rules promulgated by the Federal Office of Child Support Enforcement; (3) deviating from the statutory guidelines requiring a zero dollar support order without giving written findings specifying the reasons for the deviation; (4) declining to enjoin HFS from threatening to suspend his driver's license; (5) dismissing his petition seeking a zero dollar child support order in accordance with section 505(a)(3.3b) of the Act on the grounds that section only applies to current child support and does not preclude taking means-tested income for past-due child support; and (6) dismissing his petition for a zero dollar child support order because the petition must allege that there has been a substantial change in circumstances in addition to receiving only means-tested assistance and inability to work due to a medically proven disability. For the reasons that follow, we affirm.

11

¶ 29                    A. Denial of the Zero Dollar Support Order

¶ 30    We first consider Charles's arguments that the trial court erred by denying his petition for a zero dollar child support order. Specifically, Charles argues that the court erred by denying his petition for a zero dollar child support order on the basis that section 505(a)(3.3b) of the Act applies only to current support and does not preclude withholding means-tested benefits for past due child support. Additionally, Charles argues the court erred by denying his petition on the basis that the petition must allege that there was a substantial change in circumstances. Lastly, Charles argues the court's denial of his petition without specific written findings constitutes an abuse of discretion. In response, HFS argues that the court correctly denied Charles's petition to set a zero dollar support order, because Charles was not entitled to a zero dollar support order for his arrearage balance under section 505(a)(3.3b). HFS also argues Charles failed to show that federal regulations prohibit his SSR benefit from being garnished. We agree with HFS.

¶ 31    Section 505 of the Act governs child support. Section 505(a) provides that the court may order either or both parents owing a duty of support to pay an amount that is "reasonable and necessary" for support. *Id.* § 505(a). Generally, " '[c]hild support is a matter within the sound discretion of the trial court, and this court will not disturb the trial court's determination absent an abuse of discretion.' " *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 37 (quoting *In re Marriage of Deem*, 328 Ill. App. 3d 453, 457 (2002)). However, to the extent an appeal involves issues of statutory interpretation, our review is *de novo*. *In re Marriage of Petersen*, 2011 IL 110984, ¶ 9. "The primary objective in construing a statute is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient, or unjust results." *Id.* ¶ 15. "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.*

12

¶ 32    Section 505(a)(3.3a) of the Act (750 ILCS 5/505(a)(3.3a) (West 2022)) sets forth a rebuttable presumption that a minimum child support obligation of $40 per month, per child, should be entered for any obligor whose actual or imputed gross income is "at or less than 75% of" recent poverty guidelines for a family of one person. Further, section 505(a)(3.3b) states "[f]or parents with no gross income, who receive only means-tested assistance, or who cannot work due to a medically proven disability, *** there is a rebuttable presumption that the $40 per month minimum support order is inapplicable and a zero dollar order shall be entered." *Id.* § 505(a)(3.3b).

¶ 33    Section 505(d) of the Act (*id*. § 505(d)) provides that

> "[a]ny new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced." *Id*.

¶ 34    Section 505(g-5) of the Act (*id*. § 505(g-5)) provides, in part:

> "If there is an unpaid arrearage or delinquency *** equal to at least one month's support obligation on the termination date stated in the order for support or, if there is no termination date stated in the order, on the date the child attains the age of majority or is otherwise emancipated, the periodic amount required to be paid for current support of that child immediately prior to that date shall automatically continue to be an obligation, not as current support but as periodic payment toward satisfaction of the unpaid arrearage or delinquency. That periodic payment shall be in addition to any periodic payment previously required for satisfaction of the arrearage or delinquency. The total periodic amount to be paid toward satisfaction of the arrearage or delinquency may be enforced and collected by any method provided by law for enforcement and collection of child support, including but not limited to income withholding under the Income Withholding for Support Act." *Id*.

¶ 35    On appeal, Charles argues the trial court erred by dismissing his petition for a zero dollar child support order by finding section 505(a)(3.3b) of the Act applies only to current child support and does not preclude taking means-tested income for past due child support. In response to Charles's argument on appeal, HFS argues section 505(a)(3.3b) of the Act applies only to current

13

support and does not preclude withholding means-tested benefits for past due child support. HFS argues "[f]or purposes of section 505(a)(3.3b), therefore, it was irrelevant whether [Charles] received means-tested assistance and is unable to work due to a medically proven disability." Alternatively, HFS argues that even if section 505(a)(3.3b) applied to the arrearage, Charles's SSR benefit is considered income and not means-tested assistance. We agree with both arguments set forth by HFS.

¶ 36    As noted above, the best indication of legislative intent is the language of the statute itself. See *Petersen*, 2011 IL 110984, ¶ 9. The plain language of section 505(a)(3.3b) indicates that the legislature intended it to apply only to a determination of *current* child support, not past due support. Section 505(a) of the Act authorizes a court to order either or both parents to pay an amount of support that is "reasonable and necessary." 750 ILCS 5/505(a) (West 2022). "The duty of support owed to a child includes the obligation to provide for the reasonable and necessary physical, mental and emotional health needs of the child." *Id.* Section 505(a) defines "child" as "any child under age 18 and any child over the age of 18 who has not attained age 19 and is still attending high school." *Id.* Sections 505(a)(1) through (6) of the Act set forth guidelines and standards to determine and calculate child support. *Id.* § 505(a)(1)-(6).

¶ 37    Relevant to the issue before us, section 505(a)(3.3b) of the Act specifies when a zero dollar support order is appropriate. It provides: "For parents with no gross income, who receive only means-tested assistance, or who cannot work due to a medically proven disability, *** there is a rebuttable presumption that the $40 per month minimum support order is inapplicable and a zero dollar order shall be entered." *Id.* § 505(a)(3.3b).

¶ 38    Sections 505(a)(1) through (6) of the Act, including section (3.3b), reference the child's *current* physical, emotional, and educational needs and the parents' *current* financial resources.

14

See *Id.* § 505(a)(1)-(6). Further, those sections apply to children who are under the age of 18 or who are 18 years old but still attending high school. *Id.* § 505(a). The provisions of section 505(a) of the Act do not address a balance owed for past due support or the circumstances at the time of the prior support order's entry.

¶ 39 Charles's financial situation was only relevant until 1997, when his youngest child was emancipated. The amount he owed in past due support was a debt owed regardless of his current financial resources. See *id*. § 505(d) (child support orders are deemed to be a series of judgments against the obligor that are entered as of the date the payment becomes due and have the full force, effect and attributes of any other judgment); see also *id*. § 505(g-5) (when current support obligation ends, arrearage balance automatically continues "to be an obligation, not as current support but as periodic payment toward satisfaction of the unpaid arrearage."). As such, the fact that Charles received means-tested assistance and was deemed unable to work due to a medically proven disability is irrelevant to his arrearage. We agree with HFS that "[i]t would be illogical and incorrect to apply a zero dollar support order to past due support where section 505(a) only speaks to current child support and other parts of the statute specifically state that past due support is a debt rather than a continuing support obligation."

¶ 40 Notwithstanding the foregoing, and assuming, *arguendo*, that section 505(a)(3.3b) applies to arrearages, Charles was not entitled to a zero dollar support order, because his SSR benefit was considered income.

¶ 41 As Charles correctly notes, section 505(a)(3)(A) of the Act expressly excludes SSI benefits from the definition of "gross income." *Id*. § 505(a)(3)(A). That section provides:

> "As used in this Section, 'gross income' means the total of all income from all sources, except 'gross income' does not include (i) benefits received by the parent from means-tested public assistance programs, including, but not limited to, Temporary

15

Assistance for Needy Families, Supplemental Security Income, and the Supplemental Nutrition Assistance Program." *Id.*

As such, section 505(a)(3)(A) expressly excludes SSI benefits from the definition of "gross income" but does not do the same for concurrent SSR benefits. We agree with HFS' argument that if the General Assembly intended to similarly exclude concurrent SSR benefits from the definition of "gross income" in section 505(a)(3)(A), it could have done so. See *Bloome v. Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C.*, 279 Ill. App. 3d 469, 481 (1996) (declining to expand the scope of a statute when it "would have been simple" for the legislature to do so).

¶ 42    In support of his argument, Charles relies on a New Jersey case, *Crespo v. Crespo*, 395 N.J. Super. 190 (2007). In *Crespo*, the defendant appealed the denial of his motion to suspend court ordered payments toward his child support arrearage. *Id.* at 192. There, the parties divorced in 1990, and defendant was ordered to pay $65 per week in child support. *Id.* The defendant suffered from schizophrenia and was unable to work. *Id.* He was found disabled by the Social Security Administration and received SSI benefits as his only source of income beginning in 2001. *Id.* The Superior Court of New Jersey reversed the lower court, holding "SSI benefits should not be included in the calculation of child support when the disabled parent received no other income." *Id.* at 194-195.

¶ 43    Acknowledging we are not bound by a decision from a New Jersey court, we further find *Crespo* distinguishable from the matter at hand. In *Crespo*, the court held that SSI benefits should not be included in the calculation of child support. *Id.* The court concluded "[t]he only income defendant receives is SSI benefits, funds which may not be included in the calculation of child support and are exempt from attachment, garnishment, levy, or execution. *Id.* at 195. In the case at hand, however, Charles receives both SSI and SSR benefits. As such, the SSR portion of Charles's benefit is considered income for child support purposes.

16

¶ 44    Charles next argues the trial court erred by denying his petition on the basis that the petition must allege that there was a substantial change in circumstances. Based on our review of the record, we cannot find that the court denied Charles's petition on the basis that he must allege a substantial change in circumstances. In fact, our review of the record reveals that the court *did* find a substantial change in circumstances, and reduced Charles's payment towards his arrearage to $20 per month.

¶ 45    The evidence demonstrates that in its May 20, 2024, order, the trial court found that the parties previously stipulated that Charles owed a total of $13,344.56 in past-due support. Of that amount, Charles owed $7,600.40 to Brenda and $5,744.16 to HFS. The court found there was a substantial change in Charles's financial income, which required a downward modification of the monthly arrearage payments. The court's May 20, 2024, order specifically said, *inter alia* "Based on the current income of [Charles], there has been a substantial change in his financial income, which requires a downward modification of the monthly payments of arrearages." The court granted Charles's petition to modify the arrearage payments, and reduced Charles's payments to $20 per month. Therefore, we find Charles's argument without merit, where his position is rebutted by the record.

¶ 46    Additionally, Charles argues that the court's denial of his petition for a zero dollar child support order without specific written findings constitutes an abuse of discretion. Section 505(a)(3.4) of the Act requires a trial court, when deviating from the child support guidelines, to provide "written findings by the court specifying the reasons for the deviation and the presumed amount under the child support guidelines without a deviation." 750 ILCS 5/505(a)(3.4) (West 2022).

17

¶ 47    As noted above, the provisions of section 505(a) of the Act apply only to *current* child support orders. The matter at hand concerns efforts to collect Charles's unpaid arrearage. As such, we agree with HFS' argument that Charles's reliance on section 505(a)(3.4) is misplaced.

¶ 48    Charles also argues that the trial court erred by dismissing count II of his petition for a zero dollar child support order. In count II, Charles argued that a federal administrative rule, chapter 45 section 307.11 of the CFR was amended in 2020 in a way that precluded HFS from issuing income withholding orders to garnish SSR benefits when a person receives concurrent SSI and SSR benefits.

¶ 49    Administrative rules and regulations are construed under the same standards that govern the construction of statutes. *People ex rel. Madigan v. Ill. Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). As stated above, the interpretation of a statute is a question of law, which we review *de novo*. *Id.* When interpreting an agency rule, the primary objective is to ascertain and give effect to the intent of the agency. *Id.* The most reliable indicator of agency intent is the rule's language. *Id.*

¶ 50    Section 307.11(c)(3)(iii) of the CFR provides that HFS may

> "At the option of the State, identify cases involving a noncustodial parent who is a recipient of concurrent SSI payment and either SSDI or SSR benefits under title II of the Act and prevent garnishment of these funds from the noncustodial parent through an income withholding order; and return funds to a noncustodial parent in accordance with § 303.100(a)(8), after the agency determines that concurrent SSI payments and either SSDI or SSR benefits have been incorrectly garnished from the noncustodial parent through an income withholding order."

¶ 51    HFS argued that the relevant federal regulations gave HFS the option to prevent withholding of concurrent SSI and SSR through an income withholding order, but did not require it. We agree. Section 307.11(c)(3)(iii) of the CFR clearly begins with "[a]t the option of the State" meaning that each state had the option to prevent garnishment of concurrent benefits.

18

¶ 52    In the case at hand, HFS issued income withholding orders to garnish the SSR portion of Charles's benefit. Although HFS had the option to prevent the garnishment, the federal regulations did not require it. At the April 15, 2024, hearing, HFS specifically stated that, as permitted by section 307.11, it made a "policy decision" to withhold from Charles's concurrent benefits. HFS argued that it was "trying to get past due child support paid in a very minimal way that should have been paid long before. Had it been paid off as it should have been paid, we wouldn't be here today." We conclude that based on the plain language of section 307.11(c)(3)(iii), HFS was within its authority to withhold a portion of Charles's SSR benefit for his child support arrearage.

¶ 53    For the foregoing reasons, we find the trial court did not err in denying Charles's petition for a zero dollar child support order.

¶ 54                    B. Denial of the Petition for Injunctive Relief

¶ 55    We next consider Charles's arguments that the trial court erred by denying his petition for injunctive relief. Specifically, Charles argues that the court "erred in denying injunctive relief from [HFS'] issuance of an income withholding order on the SSR portion of the means-tested concurrent SSI / SSR benefit, in that [HFS] is in violation of the Federal Rules promulgated by the Federal Office of Child Support Enforcement that States should not garnish the SSR portion of a recipient's means-tested concurrent SSI / SSR benefit through an income withholding order." Charles also argues that the court "erred in denying to enjoin [HFS] from threatening to suspend [his] driver's license."

¶ 56    The party seeking an injunction must demonstrate "(1) a clear and ascertainable right in need of protection; (2) irreparable harm if injunctive relief is not granted; (3) no adequate remedy at law; and (4) success on the merits." *Hasco, Inc. v. Roche*, 299 Ill. App. 3d 118, 126 (1998). Typically, motions for injunctive relief are reviewed under an abuse-of-discretion standard, and

19

the trial court's decision will not be reversed unless it is against the manifest weight of the evidence. *Sparks v. Gray*, 334 Ill. App. 3d 390, 395 (2002).

¶ 57    We find the trial court did not abuse its discretion by denying Charles's petition for injunctive relief. First, Charles's petition alleged that his right to SSI and SSR benefits required protection from HFS' withholding orders. However, as explained above, HFS was authorized to garnish the SSR portion of Charles's benefit. As such, Charles failed to show a likelihood of success on the merits in his petition for injunctive relief.

¶ 58    Second, Charles had an adequate remedy at law. Charles sought to modify his arrearage payment under section 510(a) of the Act (750 ILCS 5/510(a) (West 2022)), which allows for support orders to be modified upon a showing of a substantial change of circumstances. Charles filed such a petition, and the court reduced his arrearage payment to $20 per month. As such, the court did not err by denying Charles's petition for injunctive relief.

¶ 59    Charles also argued the trial court erred by refusing to enjoin HFS from threatening to suspend his driver's license. Section 7-702(c) of the Illinois Vehicle Code (625 ILCS 5/7-702(c) (West 2022)) provides that the "Secretary of State shall suspend a driver's license upon certification by [HFS], in a manner and form prescribed by the Illinois Secretary of State, that the person licensed is 90 days or more delinquent in payment of support under an order of support issued by a court or administrative body of this or any other State." *Id*. Such a "suspension shall remain in effect until the Secretary of State received notification from [HFS] that the person whose license was suspended has paid the support delinquency in full or has arranged for payment of the delinquency and current support obligation in a manner satisfactory to the [HFS]" while a subsequent suspension on HFS' certification "shall not be removed unless the obligor is in full compliance with the order of support and has made full payment on all arrearages." *Id*. § 7-704.1.

20

¶ 60    As such, the trial court could not have enjoined HFS from taking such action. HFS argues "[t]o the extent [Charles] sought to enjoin [HFS] from reporting his support delinquency to the Secretary of State, such action is allowed under statute. See 625 ILCS 5/7-702(c)." We agree. Further, as we concluded above, the court did not err in denying Charles's petition for a zero dollar child support order nor did it err in denying his motion to suspend child support arrearage payments. Therefore, Charles failed to show he would be entitled to success on the merits. In fact, our conclusion above shows the opposite. Therefore, we find the trial court did not err by denying Charles's petition for injunctive relief.

¶ 61                                    III. CONCLUSION

¶ 62    For the reasons stated herein, we affirm the May 20, 2024, order of the circuit court of Williamson County.

¶ 63    Affirmed.

_____

*The Department of Healthcare and Family Services, ex rel. Conner, etc. v. Conner, etc.,*
2026 IL App (5th) 240725
_____

**Decision Under Review:**    Appeal from the Circuit Court of Williamson County,
No. 79-D-63, the Hon. John W. Sanders, Judge, presiding.
_____

**Attorney
for
Appellant:**    Eddie J. Minton, Marion, for appellant
_____

**Attorneys
for
Appellee:**    Kwame Raoul, Jane Elinor Notz, Nancy Jack, Office of the
Attorney General, Chicago; James E. Ford, Benton, for appellee
_____